Good morning. May it please the Court, my name is Keith Wesley. I represent the defendants and the appellants, which I'll collectively refer to as Fagron. With the Court's permission, I will do my best to reserve four minutes for rebuttal. Almost two years ago, I argued an appeal before another panel of this Court. The case involved a manufacturer of an FDA-approved drug claiming that a compounding pharmacy violated state law by distributing unapproved drugs. The name of the case was Nexus Pharmaceuticals v. Central Admixture Pharmacy Services. Today, I'm back before the same Court, different panel, arguing the same appeal, but with different parties. Like in Nexus, the plaintiff here, Hope Medical, is an FDA-approved drug manufacturer. Like in Nexus, Hope sued a compounding pharmacy, Fagron, for violating state unfair competition laws by distributing unapproved drugs. Like the defendant in Nexus, Fagron contends that the claims are preempted by the Federal Food, Drug, and Cosmetic Act. The only material difference between this appeal and the appeal I argued two years ago is that there was no case on point then, but there is a case on point now, because Nexus, when they published the decision, binds this panel. The Nexus Court, in the published opinion, held unequivocally that the claims brought by Nexus there, which Hope now asserts here, are preempted by the Federal Food, Drug, and Cosmetic Act's prohibition on private enforcement of the act. In other words, the rule in this circuit is settled. A competitor such as Nexus or Hope or any other FDA-approved manufacturer cannot hold a compounding pharmacy liable. What do you make, Counsel, of their argument that in this case, unlike Nexus, the alleged violation of the FDCA is not a necessary element of the claim because it's really a defense in this particular case? I have several responses to that, Your Honor. The first is I don't believe that that statement is true. If we look at the actual complaint, the First Amendment complaint, ER 640 through 647, there's seven full pages explaining why defendants are in violation of Section 503B of the FDCA. And so they didn't wait until the answer to rebut this issue. It is literally pled as part of their claims. And the Nexus opinion itself noted that the Nexus complaint did not expressly bring claims under the Federal Act. The Nexus opinion itself says, I quote, to avoid the bar, Nexus's First Amendment complaint, the one before us, averts that sells Emmer-Fed, all of which prohibit the sale of drugs not approved by the FDA. And to the extent that it truly is an affirmative defense, and what the plaintiff is saying is that all we have to do is show that your drugs are unapproved, then that couldn't be more preempted. Here's why. We all acknowledge that the compounded drugs sold by my client are unapproved. That's the reality. And so if the state law that they are trying to enforce is saying here in California or in South Carolina, we're not going to allow any unapproved drugs, well, they've just wiped out the entire... We don't need to, in other words, sit down and compare the complaints in this case versus the complaint in Nexus, because we can just look at their complaint. Your argument is we can just look at their complaint. And as pled, the theory is noncompliance with Section 503. I don't think it's necessary to look at the complaint in the Nexus decision, but I certainly believe it's instructive, because whole paragraphs are the same in both complaints. And so the idea that Nexus was somehow a different case than Hope Medical, it just doesn't hold water. Any reasonable reading of the complaints show that they are the exact same cases. So at the end of the day, Your Honors, there's a binding case directly on point. And so I'm happy to answer any other questions, but to me, I'm not sure that this case even warranted oral argument. So I'll sit down if the court has no further questions. All right. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court, Jeffrey Buchholz for Hope. This case is not just like Nexus. I'll walk through a number of reasons why it's not just like Nexus. First, Judge Nguyen, you're right that in this case, we did not plead as an element of our state law claims that Fegran violated the FDCA. When Counsel a moment ago described our First Amendment complaint, this is ER 629, he said that there are seven pages of allegations about defendant's violations of the FDCA. That's true. But what he didn't say is that any of that is alleged in the complaint as if it's an element of our claims. That's because it's not. Our complaint is very clear, and I would encourage Your Honors to read it, that we were simply anticipating the defense that we knew from pre-suit correspondence that they would raise. We knew their position would be that they're complying with 503B, and that if they comply with 503B, then we can't use these state laws to sue them. So we anticipated that defense, and we were very clear about that. Paragraph one, very first paragraph of our complaint, ER 630, defendants purport to avoid drug approval requirements by falsely presenting their products as lawfully compounded, when in fact they're not. So there's any number of other references like that in our complaint where we make very clear... Isn't the rub that, I mean, do state governments regulate compounding and approve them or not? Well, I mean, approve not exactly, Your Honor, but yes, state governments do regulate compounding. In fact, the practice of pharmacy has been a traditional area of state authority, you know, since the founding, really more than federal authority. Okay, fair enough, but doesn't that regulation sort of all point back to the FDA? No, not really, Your Honor, because, well, let me say, first of all, it might be that the states whose laws we sued under regulate compounding, but the other side has never argued that our claims fail because they comply with state compounding regulations, and therefore, under state law, they're not in violation of state law. Well, I guess I'm looking at paragraph 15 of the complaint. It's just one example, and it says at the beginning of that paragraph, defendants' business models are unlawful. They're engaged in unlawful, unfair business and trade practices because they're manufacturing and dispensing drugs in violation of a list of state statutes. And then the last sentence of that paragraph is, these laws prohibit the sale of drugs not approved by the FDA. And that's true, Your Honor. These laws do affect... So the point is, whether the pleading is exactly the same or not, the point is still, your theory is that the drugs are being sold, and they shouldn't be because they haven't got proper approval, and proper approval is a federal matter. The fact of approval by FDA is what the state laws turn on. But I want to come back to Your Honor's question about state regulation of compounding. What we said in paragraph 15 that you just read is all correct. The defendants could have argued that even though the state drug approval laws that we referenced in this complaint that we sued for violations of, and by their terms bar the sale of unapproved drugs, the defendants could have argued that under state law, that's not really true, that's overbroad, there has to be an implied exception for compounded drugs that comply with state law. They didn't argue any of that. So state regulation of compounding is really neither here nor there because of the way this case was litigated. They just didn't argue anything about that. And so, yes, it's true that these state laws make it relevant whether FDA has approved or in some states the state has approved the drugs at issue, but that's simply a fact question. And what's especially anomalous about this appeal now and why this is so different from Nexus is this case comes to the court after a trial. There was a trial on their defense that they complied with 503B. They lost that trial. The district court found myriad facts about why they didn't and never have complied with 503B. They're not challenging any of those findings on appeal. So as this case comes to this court, it is established and undisputed that they don't and never have complied with 503B. So their argument in the district court, this is from their trial brief at SER 28, they argued at trial. Their defense in the district court was it's improper for us to hold them liable under these states. I don't know how the difference in procedural posture really changes the preemption analysis. If we think that this is a Nexus situation, then that basically determines the preemption question. The question, Your Honor, is whether this case really is squarely governed by Nexus or not. And what I'm trying to make, the point I'm trying to make is it's not because in Nexus, the court expressed concern that the issues involved in that case, which had not yet reached trial, which was at the motion to dismiss stage, that there were unresolved issues about how 503B applied to the facts of that case, to the defendant's practices. And that would require the courts to make decisions that might step on FDA's toes because maybe the court would construe the FDCA or FDA regulations or guidance in a way that FDA wouldn't agree with. And, in fact, that might have even been a reasonable concern in Nexus itself because, and this is another important difference between the cases, Nexus involves sterile-to-sterile compounding. This case involves bulk drug substance compounding. Let me say 30 seconds about what I mean by that. Sterile-to-sterile compounding is the compounder buys the FDA-approved drug and then reconstitutes it, takes a tablet, dilutes it, turns it into a liquid for children who can't swallow the tablet. More like traditional compounding that was within the traditional practice of pharmacy regulated by states. And sterile-to-sterile compounding is both safer for patients because it's sterile-to-sterile and it does much less damage to the integrity of the FDA approval system because it's too cumbersome to do on a very large scale. What we're talking about here, that's what Nexus involves, sterile-to-sterile compounding. This case is only about bulk drug substance compounding. Bulk drug substance compounding is really a euphemism for manufacturing. You buy a drum of the active ingredient the same way we do. And you make large quantities of standardized drugs that are really just being manufactured, not compounded in the traditional sense of the word by a pharmacist who takes a drug and takes it apart and reconstitutes it to put it in a different form or something like that. So Congress in 503B distinguished very clearly between these two types of compounding for good reason. FDA has distinguished very clearly between these two types for good reason. And in the Nexus case, FDA submitted in the district court a declaration that this court's opinion relies on. Instead, FDA said, we're concerned about litigation about how the essentially a copy rule applies for sterile-to-sterile compounding because we haven't taken any action under that yet. It's ambiguous. We're in the process of revising our guidance. So we're concerned that court decisions involving these issues that we FDA are in the process of addressing could step on our toes. So that was an important factor in Nexus. It's completely absent here. Here, we're only talking about bulk drug substance compounding to begin with, which the declaration in Nexus went out of its way to distinguish and said, we're not revising our guidance as to bulk drug substance compounding. That's final. And this court in the prior appeal in this case already drew that distinction, already said the district court decisions in Nexus were not a new circumstance for purposes of reconsideration of the preliminary injunction in this case, precisely because of that distinction. But even more fundamentally, Your Honors, in this case, as this case comes to this court now, so it's undisputed and established that the defendants have never complied with 503B. And FDA, far from suggesting that they have some concern with this case going forward, this case is now over. It's been fully litigated. FDA never spoke up to suggest they had any concern. And quite the contrary, when the defendants went to FDA to ask FDA to find a clinical need for 503B entities to use this bulk drug substance in compounding that would have made it legal, subject to the other requirements of 503B, FDA said no. There's a final notice in the Federal Register from last year where FDA rejected their arguments, said they were inaccurate scientifically, and specifically found that there is no clinical need for the use of this bulk drug substance in compounding. So as this case comes to this court now, it is the polar opposite of NEXIS. It is the extreme end of the spectrum where there can't possibly be any stepping on FDA's toes. There can't possibly be any conflict with federal law. So it's one thing in NEXIS, under the facts and the circumstances there, to say letting these state law claims go forward could step on FDA's toes. Here, there's just no basis for that. And so extending... I'm not following that because you said earlier the results of the trial here are that it was found that there was a violation of 503, which is part of the FDCA, correct? Well, right, because the defendant's defense at trial was... I'm setting up my real question. That's true, right? You say that the trial in this case found that there was a violation of federal law. Right. The trial in this case... So then Congress decided in that federal law to make enforcement of that law exclusively federal. Actions for enforcing those requirements are only to be in the name of the United States. Now, point taken, in NEXIS, the FDA spoke up and said, you know, this isn't something we wanted to do and gave a clear signal that they wanted to retain control over enforcement. And we don't have that here that I'm aware of. But nonetheless, the statute that Congress passed only gives the federal government enforcement authority. So whether the FDA is here in this case saying, don't do this, we want to do this, or we don't want to do this, or whatever, the question still remains, who gets to do this? And it doesn't seem like it's through private actors. Your Honor, the question is, what is this? In NEXIS, again, this court understood the plaintiff's claims as having an element, a necessary element, as a violation of the FDCA. So based on that premise, this court thought the NEXIS claims really were just private enforcement of the FDCA. But you have said that the premise of the trial in this case was a finding of a violation of federal law. That's because it was their defense. The point I'm trying to make, Your Honor, is Your Honor is alluding to Section 337 of the FDCA. Section 337 says all proceedings to enforce the FDCA shall be by the United States. That means there's no private right of action to enforce the FDCA. That's clear. Section 337 does not say that states cannot enact their own laws that parallel rather than conflict with the FDCA. It doesn't say that. And, in fact, reading Section 337 to mean that states can't enact their own laws that parallel rather than conflict with the FDCA would turn the FDCA into a field preemption statute. Nobody thinks, and Wyeth v. Levine specifically held the contrary, that the FDCA is a field preemption statute. It did not fully oust the states from the field of drug and safety regulation. This Court's decisions in Stengel and McClellan make that clear, as well as Wyeth v. Levine, as well as the United States speaking for FDA, the two amicus briefs that they filed in the Supreme Court addressing very similar claims to this case, where the United States told the Supreme Court, speaking for FDA, there's no field preemption here. State law claims, even that do have as an element, unlike ours, a violation of the FDCA, are still state law claims. Section 337 does not disable states from enacting their own statutes. Of course, if the state statutes conflict with the FDCA, then the Supremacy Clause disables the states from doing that. But where there's no conflict between state law and federal law, there can't be conflict preemption. There's no such thing as conflict preemption without a conflict. So, really, what the defendants are arguing here is there's no substantive conflict between state law and federal law. The district court found, as a fact, rejecting their defense that they comply with federal law. So as this case comes to the court, they never have complied with federal law. FDA has now taken formal action to find that they can't do what they were doing, using that bulk drug substance. And nonetheless, states can't enact statutes that prohibit the same conduct that's already prohibited as a matter of federal law. Now, if this were field preemption, then states would simply be ousted from the field, and it wouldn't matter whether there was a conflict. But it's just not tenable to suggest that states are ousted from the field of drug health and safety regulation or fair competition regulation absent a conflict. So what's the conflict? And what the defendants are trying to say is just because FDA hasn't brought an enforcement action against them, then that means that they're immune under these state law claims that the conflict, and I would say in quotes, is that state law is being used to enforce state law that's parallel to federal law. But if there was a specific risk, as in Nexus, that state law, although nominally parallel, ostensibly parallel to federal law, was being applied in a way that was contrary to a specific determination by FDA or that raised a specific concern on the part of FDA, then maybe that would still be a conflict, even though state law and federal law were nominally parallel. That's really what was at issue in Nexus. And the United States amicus briefs that I mentioned earlier make that point to the Supreme Court. They say, in general, state law that parallels the FDCA does not conflict with it, is not barred by Section 337. There could be an individual case, not the minority of cases, but there could be an individual case where there's something specific about the facts or specific about what FDA is doing, where maybe FDA has made a determination about how to apply its own laws that the state court could disagree with, and there could be tension. Here, there is none. Here, there can't possibly be any. The FDA has already said in a final action that they can't do what they were doing. So if this Court really were to extend Nexus to this circumstance, to this circumstance here, where there's no conflict conceivable between these state law claims and federal law, what the Court really would be saying is states are completely ousted from this field. And that's inconsistent with Stengel, this Court's en banc decision, and McClellan, as well as Wyeth against Levine, as well as I think your arguments may have some viability pre-Nexus, but the problem really is Nexus, and it's really holding that there can be no private enforcement under these circumstances because you're standing as an obstacle to the FDA's enforcement discretion. Well, but, Your Honor, the Court needs Whether that's right or not, I think that's a problem for your case. I understand that this panel is bound by Nexus, but this panel is also bound by Stengel. The en banc decision, if there's any tension between them, the en banc decision trumps Nexus. The panel is also bound by McClellan. The panel is certainly bound by Wyeth against Levine. The panel is also bound by Riegel against Medtronic and Medtronic against Lohr. So it's not just about Nexus. The Court needs to read Nexus to try to make it consistent to the extent it can with all the rest of the binding precedent that the Court is supposed to be equally bound by. So extending Nexus to these circumstances, where there is no conceivable conflict between these state law claims and federal law, would take Nexus even further, not just in tension with those other precedents, but would really make it irreconcilable with it. In Stengel, the plaintiff's theory under state law was the reason the defendants violated state law was because they violated an FDA regulation regarding the reporting of adverse events. The opinion was very clear. That's okay. You can do that. You can make federal law a standard of care, or an element even, of a state law claim, as long as it's still a state law claim. If this was an ERISA case and you had complete preemption, where you try to plead a claim that's within the scope of ERISA, and by operation of law it's just automatically transformed into a federal claim, that would be one thing. 337 doesn't say states can't enact their own laws. It doesn't say anything that you purport to plead under state law is just automatically deemed a claim under federal law, as if you're trying to privately enforce the FDCA. And it would be a radical step for the court to say that even where there's clearly no conflict between state law and federal law, you still can't bring a claim that the states have duly enacted, providing for these claims under state law, in the field of drug health and safety regulation or fair competition. That would amount to field preemption. Thank you, counsel. Thank you very much. I appreciate your argument. Thank you. Just a couple of brief points, Your Honors. Is nexus controlling here? Hope Medical submitted an amicus brief in support of in-bank review of the nexus decision. This court stayed this appeal pending issuance of the nexus decision. If we're being intellectually honest, we all know that these are the same cases and nexus controls this case. Where is the conflict? If Hope is saying that the state laws prohibit any unapproved drug, which is what I'm hearing, that they can walk into court and put on their case by simply saying that our drugs weren't approved, full stop, then that is a clear conflict. It's not a parallel situation because, on the other hand, everyone agrees that the federal framework, the FDCA, does allow unapproved drugs, including but not limited to compounded drugs that are at issue in this court. And so they can't have it both ways. Either there's a clear conflict because they're saying that only unapproved drugs can be sold, no unapproved drugs can be sold in California, or they're saying, well, we still have to look at these exceptions under the DQSA,  the law that 337 says can only be enforced in the name of the U.S. government. Just one final point, Your Honors, unless you have any questions. I think it's just important to note, for the record, that one of the reasons why I believe Nexus came out the way it did is because we don't want judges or juries determining in one part of the country whether a compounded drug can be available, and in another part of the country, a judge or a jury that doesn't have the expertise and experience of the FDA coming to a different interpretation. That's bad policy, and Nexus ensures that that doesn't occur. So, thank you, Your Honors. Thank you, Counsel. Both sides for your argument today. The matter is submitted.
judges: THOMAS, NGUYEN, FORREST